**In re VETERANS CHOICE
MORTGAGE, INC.,
Debtor.**

**Jimmy Young and Rose
Young, Movants,**

v.

**Edward J. Coleman, III and Scott
J. Klosinski, Respondents.**

No. 01–12878.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

July 11, 2002.

James C. Overstreet, Klosinski & Associates, Augusta, GA, for creditor.

Edward J. Coleman, Augusta, GA, trustee.

### ORDER

JOHN S. DALIS, Chief Judge.

Jimmy and Rose Young (hereinafter "Youngs") object to Edward Coleman, the Chapter 7 case trustee's, (hereinafter "Trustee") selection of Scott Klosinski (hereinafter "Klosinski") as special purpose counsel under 11 U.S.C. § 327.[1] Because Klosinski does not represent or hold any interests adverse to the debtor or estate with respect to the specific purpose for which he has been employed, the Youngs' motion is denied.

The Court has jurisdiction to hear this matter as a core bankruptcy proceeding under 28 U.S.C. § 157(b)(2)(F), (H), and (O) and 28 U.S.C. § 1334.

The facts are as follows. On May 14, 2001, J & B Enterprises, Inc. ("J & B Enterprises") received a consent judgment for $98,755.02 against Veterans Choice Mortgage, Inc. (hereinafter "Debtor"). This judgment released the Debtor's principal shareholder, Jimmy Young, from liability. A similar consent judgment for $117,518.00 was entered in favor of National Mail Service of CSRA, Inc. (hereinafter "National Mail"). As with the J & B Enterprises, this consent judgment absolved Jimmy Young from liability. On September 6, 2001, J & B Enterprises, National Mail, and a third judgment creditor, Doctors & Merchants Credit Bureau, Inc. (hereinafter "Doctors & Merchants"), filed a Chapter 7 involuntary bankruptcy case against the Debtor. All three judgment creditors were represented by Klo-

---

1. 11 U.S.C. § 327 states:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(b) If the trustee is authorized to operate the business of the debtor under section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

(d) The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate.

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

(f) The trustee may not employ a person that has served as an examiner in the case.

sinski's law firm. The firm also prepared the petitioning creditors' proofs of claim,[2] conducted a Bankruptcy Rule 2004 examination of Jimmy Young, and subpoenaed the Debtor's documents and financial records.

On December 17, 2001, the Trustee filed a Bankruptcy Rule 2014 application to employ Klosinski as special counsel in an adversary proceeding against James C. Young, Rose Young, and America's Choice Mortgage "and possibly other defendants in connection with preferential transfers, fraudulent conveyances, and other tort claims." (Trustee Application ¶ 3.) In an attached affidavit dated December 17, 2001, Klosinski states that he represents the three petitioning creditors but that all three consented to his employment as Trustee's special counsel. (Klosinski Aff. ¶¶ 3 & 7.) This Court granted Trustee permission to hire Klosinski as his attorney on December 13, 2001. Trustee subsequently filed adversary complaint 02–01018 against James C. Young, Rose Young, and America's Choice Mortgage, Inc. on February 22, 2002.

On January 22, 2002, Jimmy and Rose Young moved to remove Klosinski as Trustee's attorney in the adversary proceeding 02–01018 because his representation of the petitioning creditors conflicted with his role as Trustee's attorney. The Youngs had previously filed, on January 14, 2002, another adversary complaint 02–01003 alleging § 362 violations against J & B Enterprises and its principal shareholder and agent, Joseph Szabo. A hearing was held on the Youngs' motion on March 7, 2002, where Klosinski stated that he no longer represents the three petitioning creditors. In an affidavit signed April 8, 2002, Jim Overstreet ("Overstreet"), an associate attorney at Klosinski's law firm, testified that the firm withdrew as counsel for the three petitioning creditors and that all three signed waiver of conflict forms. (Overstreet Aff. ¶¶ 4 & 6.) Overstreet further stated that all three creditors were advised that Trustee employed Klosinski for "the special and limited purpose of pursuing the Chapter 7 Trustee's claims against Jimmy Young, Rose Young, and America's Choice Mortgage, Inc." (Overstreet Aff. ¶ 5.)

The Youngs argue that Klosinski does not meet the requirements § 327(a) or (e) because his prior representation of the three petitioning creditors conflicts with his employment as special purpose counsel for the Trustee. More specifically, Klosinski, as J & B Enterprises' former counsel, would be a necessary witness in the Youngs' adversary proceeding No. 02–01003 against J & B Enterprises and Szabo and may be called to testify about advice he gave to Szabo regarding the automatic stay. The Youngs also assert that one or more petitioning creditors represented by Klosinski could be sued by the Trustee for fraudulent conveyances and that this is another possible conflict. Finally, the Youngs maintain that Klosinski's former clients are judgment lien creditors whose interests fundamentally conflict with the Trustee's who represents the estate and as such protects the interests of unsecured creditors. The judgment lien creditors are only interested in pursuing money in the amount of their lien with no regard for what monies are left over for the unsecured creditors, and their interests therefore conflict.

Klosinski argues that under this Court's decision in *Moore v. Kumer (In re Adam*

---

2. On January 14, 2002, the Trustee objected to J & B Enterprises' proof of claim for $105,765.27 as a secured claim because there was no collateral. J & B Enterprises filed a response on March 6, 2002, and a hearing is currently pending. Trustee also objected to National Mail's proof of claim on similar grounds, February 5, 2002.

*Furniture)* 191 B.R. 249 (Bankr.S.D.Ga. 1996), an actual conflict of interest must exist for disqualification under § 327 and that no conflict exists because the interests of the secured creditors coincides with the estate's in this particular matter. Klosinski also maintains that the fees owed by the petitioning creditors for filing the involuntary bankruptcy do not create a conflict because they are an allowed administrative expenses under 11 U.S.C. § 503(b)(1)(C)(3) and (4) [3].

 Bankruptcy Code (title 11) section 327 allows the trustee to hire professionals to assist with the administration of the estate. Section 327(a) lays out standards for general purpose professionals, who must be disinterested persons with no interests adverse to the estate's. *Moore v. Kumer (In re Adam Furniture Industries, Inc.),* 191 B.R. 249, 259 (Bankr.S.D.Ga. 1996). Sections 327(c) and (e) carve out exceptions to 327(a). Section 327(c) prohibits disqualification of professionals solely because they represent a creditor "unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of inter-

---

**3.** 11 U.S.C. § 503 provides:

(a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph;

(2) compensation and reimbursement awarded under section 330(a) of this title;

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

(A) a creditor that files a petition under section 303 of this title;

(B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;

(C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;

(E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or

(F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant;

(5) reasonable compensation for services rendered by an indenture trustee in making a substantial contribution in a case under chapter 9 or 11 of this title, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(6) the fees and mileage payable under chapter 119 of title 28.

est." Section 327(e) allows the trustee to hire, with the court's permission, an attorney who has represented the debtor provided that it is "in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." While § 327(e) references only attorneys who have represented the debtor, this provision also applies to special purpose attorneys who have represented other creditors. *Id.*[4] Sections 327(c) and (e) are to be read together when the trustee seeks to employ special counsel who represent either creditors or debtor. *Id.* Section 327(a) does not apply here because it applies to general counsel retained by trustee, and not to special counsel. *Id.* I must, therefore, "make the limited inquiry into whether there is an actual conflict in the special matter only." *Id.* In *Moore v. Kumer*, the two attorneys continued as counsel for both the trustee and their creditor clients. *Id.* Because the interests of the estate and the creditor were parallel rather than adverse with regard to the special matter, I found no actual conflict of interest. *Id.* No conflict exists when "the interest of the special counsel and the interest of the estate are identical with respect to the matter for which special counsel is retained." *In re AroChem Corp.*, 176 F.3d 610, 622 (2nd Cir.1999).

◼ I must therefore determine whether the interests of Klosinski's three former clients conflicts with the estate's interests with regard to this single matter. The facts of the instant case are even more compelling than those of *Moore v. Kumer* because Klosinski withdrew from representing the three petitioning creditors in order to serve as Trustee's special counsel. The interests of the Trustee and the three petitioning creditors coincide in that the Trustee seeks to recover for the estate money allegedly transferred from the Debtor to the Youngs, which would also be in the petitioning creditors' interests.

The estate owes legal fees to Klosinski for his representation of the petitioning creditors in the involuntary bankruptcy filing under 11 U.S.C. § 503(b)(3)(A) and (4). Under 11 U.S.C. § 101(14)(A), creditors cannot be disinterested persons[5]. Be-

---

**4.** This Court in *Moore v. Kumer (In re Adam Furniture Industries, Inc.)* cites *In re AroChem Corp.*, 181 B.R. 693, 698 (Bankr.D.Conn. 1995) in support of its holding that § 327(e) applies to special counsel who have represented creditors. 191 B.R. 249, 258 (Bankr. S.D.Ga.1996). After my holding in *Adam Furniture*, the Second Circuit Court of Appeals affirmed the lower court's holding in *In re AroChem Corp.*, but held that "section 327(e) itself does not apply in this case and we must analyze the proposed retention under sections 327(a) and (c)." 176 F.3d 610, 622 (2nd Cir.1999). The circuit court did rely on "reason by analogy to 327(e)" so that in a case where the trustee seeks to hire special counsel for a specific matter, " 'there need only be no conflict between the trustee and counsel's creditor client with respect to the specific matter itself.' " *Id., citing Stoumbos v. Kilimnik*, 988 F.2d 949, 964 (9th Cir.1993),

*cert. denied* 510 U.S. 867, 114 S.Ct. 190, 126 L.Ed.2d 148 (1993).

**5.** 11 U.S.C. § 101(14)(A) reads:

(14) "disinterested person" means person that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

cause Klosinski is owed these fees, he is not disinterested under § 327(a). However, as previously mentioned, § 327(c) and (e), rather than § 327(a), apply to counsel hired by the trustee for a specified special purpose. Although Klosinski is a creditor himself under § 503(3)(A) and (4), this interest would not be adverse to the debtor or the estate with respect to the specific adversary proceeding for which he has been hired. Both the estate and Klosinski as creditor have the common interest of recovering more money for the estate.[6]

■ The Youngs also assert that Klosinski's representation of the trustee conflicts with the interest of his former clients under ABA Model Rule 1.9. The ABA Model Rules are adopted in the Southern District of Georgia. *Moore v. Kumer (In re Adam Furniture)*, 191 B.R. at 259, *citing Waters v. Kemp*, 845 F.2d 260 (11th Cir. 1988). Under Model Rule 1.9(a),

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

The Youngs maintain that Model Rule 1.9 implicitly requires the consent of both former and new clients and that they are in fact new clients because they are unsecured creditors whose interests are represented by the estate. Therefore, as current clients, the Youngs' approval must be obtained.

■ While the trustee, as representative of the estate, looks to the interests of the unsecured creditors, they are two separate entities whose interests are not always aligned, as evidenced by the adversary proceeding between the Trustee and the Youngs. Furthermore, the Youngs' interpretation of Model Rule 1.9 would allow them to pick their adversary's counsel. *See Stoumbos v. Kilimnik*, 988 F.2d 949, 964–65 (9th Cir.1993), *cert. denied* 510 U.S. 867, 114 S.Ct. 190, 126 L.Ed.2d 148 (1993) (court rejected similar argument that trustee is fiduciary representative of all creditors and noted that "[u]nder [plaintiff's] reasoning, the trustee could never pursue an action against one of the estate's creditors, because he would have a fiduciary obligation to the creditor"). Klosinski met the requirements of Model Rule 1.9 when he obtained waivers of interest from his former clients.

■ The Youngs also maintain that Klosinski is inappropriate because he may be called to testify in the Young's adversary proceeding against his former client J & B Enterprises and its primary shareholder, Szabo. ABA Model Rule of Professional Conduct 3.7(a) states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

---

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason;

**6.** Even if 327(a) applied to this analysis, Klosinski would most likely fall under a special exception "limited to cases where pre-petition

liens have been taken solely for future bankruptcy services and/or where the legal fees that accrued pre-petition have been incurred solely for services rendered in contemplation of and in connection with the bankruptcy." *In re Adam Furniture Industries, Inc.*, 158 B.R. 291, 298 (Bankr.S.D.Ga.1993) (law firm in question did not fall into disinterestedness exception because it was owed for non-bankruptcy related work).

**76**

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Nowhere does ABA Rule 3.7 state that a lawyer shall be disqualified because he may be called to testify in a separate case involving the same opposing party.

Under the facts of this case the Trustee may retain Klosinski as special purpose counsel for his adversary proceeding against the Youngs. It is therefore ORDERED that the Young's motion IS DENIED.